716 A.2d 593

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**David COMER, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 18, 1996.

Decided Aug. 7, 1998.

Fortunato N. Perri, Jr., Philadelphia, for David Comer.

Catherine Marshall, Andrew S. Gibson, Philadelphia, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION

ZAPPALA, Justice.

This is an appeal from an order of the Superior Court which affirmed the decision of the Philadelphia County Common Pleas Court. We affirm in part and reverse in part.

Following a bench trial, Appellant, David Comer, was convicted of recklessly endangering another person,[1] homicide by vehicle,[2] involuntary manslaughter,[3] and aggravated assault.[4] Post-verdict motions were denied and Appellant received a sentence of two and one half to five years imprisonment for

1. 18 Pa.C.S. § 2705.
2. 75 Pa.C.S. § 3732.
3. 18 Pa.C.S. § 2504.
4. 18 Pa.C.S. § 2702(a)(1).

homicide by vehicle, a consecutive sentence of two and one half to five years for involuntary manslaughter and a concurrent sentence of five to ten years for aggravated assault.

We granted allocatur to address four issues. The first two issues challenge the sufficiency of the evidence for Appellant's convictions of aggravated assault and involuntary manslaughter. In reviewing the sufficiency of the evidence, we must determine whether the evidence and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all the elements of the offense beyond a reasonable doubt. *Commonwealth v. Brown*, 544 Pa. 406, 676 A.2d 1178 (1996).

Viewed in this light, the evidence established that on July 28, 1992, at approximately 4:00 or 5:00 p.m., Appellant arrived at a pool party in Philadelphia. While there, he met his friend Matt Engler. Engler testified that both he and Appellant drank beer and that both men took pills described as "muscle relaxers" or "downers." [5] He stated that the pills were given to them by another individual at the party. When asked how much beer Appellant drank, Engler responded, "Not much." Appellant himself testified that he drank four or five beers at the party.

Shortly after midnight, Appellant and Engler left the party en route to a bar. Appellant, driving a rented white Buick Regal, travelled southbound in the right hand lane on Roosevelt Boulevard. He was driving at an excessive rate of speed when his right tire began to rub the curb near Grant Avenue. The vehicle then left the roadway, crashed into a SEPTA bus stand, and continued until it struck a brick wall. Justin Freeland and Carol Velozzi were waiting for a bus when Appellant's car came crashing through. Freeland died at the scene. Velozzi's leg was broken and she was hospitalized for two weeks.

---

**5.** On cross-examination, Engler testified that he did not recall whether Appellant ingested one or several pills and also did not recall when he made such observation.

Evidence introduced at trial established that the posted speed limit was 45 m.p.h. Two eyewitnesses testified that immediately prior to the accident they observed Appellant's vehicle travelling at a speed exceeding 45 m.p.h. Mary Ann Schacta testified that she estimated the speed of Appellant's vehicle as 55 m.p.h. Steven Sacco, a tow truck driver, testified that Appellant's vehicle passed him and was "out of control," travelling in excess of 70 m.p.h. No skid marks appeared on the pavement and there was no other evidence indicating that Appellant quickly applied his brakes. The evidence also established that there was no obstruction on the roadway at the time of the accident.

Officer Donald Lowenthal was the first officer to arrive at the scene. When he approached Appellant he detected a slight odor of alcohol. A blood alcohol content (BAC) test was administered at 2:07 a.m. which revealed an alcohol content of .033.

■ We shall first address the sufficiency of evidence issue relating to Appellant's conviction for aggravated assault. A person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1).

We examined the requisite mens rea of recklessness for an aggravated assault conviction in *Commonwealth v. O'Hanlon*, 539 Pa. 478, 653 A.2d 616 (1995). In *O'Hanlon*, the defendant, while severely intoxicated,[6] drove his vehicle through a red light and struck another vehicle. Both the defendant and the driver of the other vehicle were seriously injured.

In reversing the conviction for aggravated assault, we found that there was an increased degree of recklessness required by the aggravated assault statute, i.e., reckless "under circumstances manifesting extreme indifference to the value of human life." We held that

6. The defendant's blood alcohol content based on a blood serum reading was .224.

mere recklessness is insufficient to support a conviction for aggravated assault, which requires a higher degree of culpability, i.e., that which considers and then disregards the threat necessarily posed to human life by the offending conduct. There must be an element of deliberation or conscious disregard of danger not present to the same extent in, e.g., either reckless endangerment ... or driving while intoxicated.

*Id.* at 482, 653 A.2d at 618.

We further stated that

for the degree of recklessness contained in the aggravated assault statute to occur, the offensive act must be performed under circumstances which almost assure that life threatening injury will ensue. The recklessness must, therefore, be such that life threatening injury is essentially certain to occur. This state of mind is, accordingly, equivalent to that which seeks to cause injury.

*Id.*

In *O'Hanlon,* we noted that examples of recklessness in which life threatening injury is essentially certain to occur include firing a gun into a crowd, *Commonwealth v. Daniels,* 467 Pa. 35, 354 A.2d 538 (1976), or driving a vehicle into a crowd after having aimed the vehicle at a particular individual, *Commonwealth v. Laing,* 310 Pa.Super. 105, 456 A.2d 204 (1983).

Applying the aforementioned law to the facts of this case, we find that the Commonwealth did not establish that Appellant possessed the state of mind equivalent to that which seeks to cause injury. The evidence established that Appellant was driving at an excessive rate of speed after consuming four or five beers and ingesting at least one "downer" at some time prior to the accident. While Appellant's actions are clearly criminal, they do not constitute aggravated assault.

The Commonwealth argues that this case is controlled by *Commonwealth v. Scofield,* 360 Pa.Super. 552, 521 A.2d 40 (1987), *alloc. denied,* 517 Pa. 593, 535 A.2d 82 (1987), where the defendant's aggravated assault conviction was sustained

when it was established that he drove his vehicle in an erratic manner after consuming a small amount of alcohol and ingesting drugs. Although superficially similar, the case is factually distinguishable.

In *Scofield,* the defendant was driving his vehicle and scraping his car against the bumper of a vehicle parked on the street. Sparks were flying and the defendant travelled another ten feet in this manner before swerving onto the sidewalk and striking a building. A nearby cabdriver realized that the defendant had struck a pedestrian, who was under the right fender of the defendant's vehicle. The cabdriver directed the defendant to turn the car off and even attempted to reach into the car to remove the keys from the ignition. The defendant became belligerent, hit the cabdriver and attempted to bite him. The defendant then unsuccessfully tried to put his car into reverse, but a flat tire prevented his flight. As a result of the incident, the pedestrian's leg was amputated.

Although the defendant's BAC was only .004, a drug test revealed two different types of barbiturates in his urine. Furthermore, the officer at the scene testified that the defendant had an odor of alcohol on his breath, spoke with a thick tongue, had a hard time standing and had to be helped away from the vehicle.

The Superior Court concluded that the record was replete with evidence that the defendant operated his car in an *intentionally* reckless manner. It noted that the defendant repeatedly scraped his car against parked vehicles, and that he had no regard for the victim's plight when confronted with the situation. The court found that the defendant's behavior prior to and after the accident established that he was aware of his reckless conduct. Thus the defendant considered, then disregarded, the threat to the life of the victim. These circumstances demonstrate a higher degree of recklessness than those presented in the instant case.

In contrast, Appellant sped past another vehicle, his car rubbed the curb of the sidewalk and the accident ensued immediately thereafter. The fact that both Appellant and the

defendant in *Scofield* drank alcohol and ingested some amount of a controlled substance is not controlling. As we find Appellant's conduct more akin to that which occurred in *O'Hanlon*, we reverse his conviction for aggravated assault.

■ We next examine Appellant's claim that the evidence was insufficient to sustain his conviction for involuntary manslaughter. A person is guilty of involuntary manslaughter when, as a direct result of the doing of an act in a reckless or grossly negligent manner, he causes the death of another person. 18 Pa.C.S. § 2504.

We have held that there is a distinction between the term "negligently" as set forth in 18 Pa.C.S. § 302(b)(4) and "recklessly" as set for in 18 Pa.C.S. § 302(b)(3). The latter definition encompasses gross negligence. *Commonwealth v. Lobiondo*, 501 Pa. 599, 462 A.2d 662 (1983). Section 302(b)(3) defines "recklessly" as follows:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(3).

As noted, this is a lesser degree of "recklessness" than that required for a conviction of aggravated assault. Such concept is logical considering the fact that aggravated assault is a second degree felony, while in most cases involuntary manslaughter is a first degree misdemeanor. See 18 Pa.C.S. §§ 2702(b) and 2504(b).[7] The difference in the grading of the crimes reflects the distinct state of mind required of the actor in each circumstance.

7. When the victim is under twelve years of age and is in the care, custody or control of the defendant, involuntary manslaughter is a felony of the second degree.

Recognizing this distinction, we find that there was sufficient evidence to establish that Appellant acted with the recklessness contemplated by the involuntary manslaughter statute. See *Commonwealth v. Mayberry*, 290 Pa. 195, 138 A. 686 (1927) (individual negligently operating his vehicle at an unlawful speed was guilty of involuntary manslaughter for death resulting therefrom); see also *Commonwealth v. Honeycutt*, 227 Pa.Super. 265, 323 A.2d 775 (1974) (one is guilty of involuntary manslaughter when his racing with another vehicle was the proximate cause of a fatal accident); *Commonwealth v. Hicks*, 203 Pa.Super. 307, 201 A.2d 294 (1964) (involuntary manslaughter established when defendant drank "a little wine," drove his vehicle through a red light, killed a pedestrian, and failed to stop and render aid); *Commonwealth v. Holman*, 160 Pa.Super. 211, 50 A.2d 720 (1947) (involuntary manslaughter conviction sustained when defendant was speeding and fatally struck a child with his vehicle in broad daylight with no obstructions of view); *compare Commonwealth v. Cienkowski*, 290 Pa.Super. 415, 434 A.2d 821 (1981) (mere Vehicle Code violation is insufficient to establish recklessness or gross negligence required to prove involuntary manslaughter); *Commonwealth v. Trainor*, 252 Pa.Super. 332, 381 A.2d 944 (1977) (brief encroachment onto wrong side of road due to inattention to driving is insufficient to establish involuntary manslaughter).

■ Appellant next contends that the lower courts erred in concluding that he made a knowing and intelligent waiver of his right to a jury trial under Pa.R.Crim.P. 1101.[8] Appellant acknowledges that Judge Ribner, who presided over the trial, conducted an on the record colloquy which apprised him of the essential elements of a jury trial. Appellant contends, howev-

8. This rule provides as follows:

In all cases, the defendant may waive a jury trial with approval by a judge of the court in which the case is pending, and elect to be tried by a judge without a jury. The judge shall ascertain from the defendant whether this is a knowing and intelligent waiver and such colloquy shall appear on the record. The waiver shall be in writing, made a part of the record, signed by the defendant, the judge, and the defendant's attorney as a witness.

er, that his waiver was unknowing due to the fact that Judge Ribner did not disclose that he had previously been a victim of a drunk driving accident. He asserts that had he known such information, he would not have waived his right to a jury trial.[9]

We have held that all litigants have the right to believe that the jurist they are appearing before is impartial and unbiased and that the jurist will promptly bring to the attention of the parties any latent biases or personal interests which might possibly affect their judgment in the case. *Reilly v. SEPTA*, 507 Pa. 204, 489 A.2d 1291 (1985). As Judge Ribner's accident with a drunk driver *ten years prior* to Appellant's trial does not demonstrate that he possessed a latent bias or a personal interest affecting his judgment in the case, he was under no obligation to disclose the circumstances to Appellant. Appellant has presented absolutely no evidence that Judge Ribner's judgment in this case was affected in any way by his prior experience. Accordingly, Appellant's lack of knowledge of a fact that was irrelevant to the resolution of his case does not render his otherwise knowing jury trial waiver invalid.

■ Appellant finally contends that because his convictions for involuntary manslaughter and homicide by vehicle were based upon the same conduct and caused a single death, the imposition of multiple sentences violates the double jeopardy clauses of the Pennsylvania Constitution and the United States Constitution.[10]

9. Appellant apparently became aware of Judge Ribner's prior accident after sentencing since he first challenged the judge's impartiality in his motion for reconsideration of sentence.

10. Article I, Section 10 of the Pennsylvania Constitution provides in pertinent part that "[n]o person shall, for the same offense, be twice put in jeopardy of life or limb. . . ."

The Fifth Amendment to the United States Constitution similarly states ". . . nor shall any person be subject for the same offence to be twice put in jeopardy of life and limb. . . ."

We have held that the same inquiry is involved in determining whether double jeopardy is violated and whether crimes are greater or lesser included offenses and therefore merge for sentencing purposes. *Commonwealth v. Anderson*, 538 Pa. 574, 580, 650 A.2d 20, 23 (1994).

In *Commonwealth v. Houtz,* 496 Pa. 345, 437 A.2d 385 (1981), we held that double jeopardy prevented the imposition of separate sentences for homicide by vehicle and involuntary manslaughter when the same act served as the basis for both offenses.[11] Finding that the culpable conduct necessary for a conviction of homicide by vehicle was subsumed by the more stringent counterparts contained in the crime of involuntary manslaughter, we vacated the sentence imposed for homicide by vehicle. In doing so, we found that involuntary manslaughter as charged required proof that the actor engaged in a Vehicle Code violation in a reckless or grossly negligent manner and that the death was caused as a direct result. Because neither provision required proof which the other did not, we concluded that the defendant could only be sentenced for one offense.[12]

The Superior Court, however, failed to follow *Houtz* in the instant case, finding that it was no longer valid in light of our decision in *Commonwealth v. Anderson,* 538 Pa. 574, 650 A.2d 20 (1994).[13] The court interpreted *Anderson* as holding that to determine whether one offense is a greater or lesser included offense of the other, the statutory elements of the offenses must be compared without considering the underlying factual circumstances.

**11.** Judge Wieand filed a concurring and dissenting statement in the instant matter wherein he relied on *Houtz* and stated that he would vacate the sentence imposed for homicide by vehicle as a violation of double jeopardy.

**12.** The Superior Court followed this approach in *Commonwealth v. Alarie,* 378 Pa.Super. 11, 547 A.2d 1252 (1988), *alloc. denied,* 521 Pa. 616, 557 A.2d 720 (1989), and *Commonwealth v. Hernandez,* 339 Pa.Super. 32, 488 A.2d 293 (1985).

**13.** The court also found *Houtz* distinguishable. It held that unlike the instant case where Appellant's convictions were supported by different criminal conduct, i.e., excessive speed in the case of the homicide by vehicle conviction and impairment by intoxication in the case of the involuntary manslaughter conviction, the convictions in *Houtz* were based on a single criminal act, driving erratically and swerving into the passing lane. We reject this hypertechnical examination of the facts and find that Appellant's reckless operation of his vehicle was the basis for both his convictions of homicide by vehicle and involuntary manslaughter.

▮▮▮▮

The offense of homicide by vehicle requires (1) the unintentional causing of a death, (2) while engaged in a violation of any law, municipal ordinance, or traffic regulation, which relates to the operation or use of a vehicle. 75 Pa.C.S. § 3732. The elements of involuntary manslaughter include: (1) the commission of an act in a reckless or grossly negligent manner, (2) which causes the death of another person. 18 Pa.C.S. § 2504.

▮▮▮ The Superior Court concluded that homicide by vehicle is not a lesser included offense of involuntary manslaughter since it requires an additional element, a violation of the Vehicle Code. Likewise, it concluded that involuntary manslaughter is not a lesser included offense of homicide by vehicle since it requires a higher degree of culpability.[14]

Although the simplicity of this analysis is appealing, it ignores the context in which the *Anderson* rule was created. In *Anderson*, the defendant committed one criminal act; he shot the victim and critically injured her. In determining whether the single criminal act could support multiple sentences for attempted murder and aggravated assault, we examined whether the crimes were greater and lesser included offenses, i.e., whether the elements of the lesser included offense were a necessary subcomponent but not a sufficient component of elements of the other crime.

We recognized that the standard used to determine whether two charges constitute the "same offense" was first articulated by the U.S. Supreme Court in *Blockburger v. U.S.*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932):

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether they are two offenses or only one is whether each provision requires proof of a fact which the other does not.

**14.** The mens rea for homicide by vehicle is satisfied when the defendant acts in a criminally negligent or reckless manner. *Commonwealth v. Heck*, 517 Pa. 192, 535 A.2d 575 (1987).

In *Anderson*, we found that the offenses of attempted murder and aggravated assault did not require proof of a fact which the other did not. The same is true in the instant case. Appellant's act of recklessly driving his vehicle into the SEPTA bus stand supports both the general element of the "commission of a reckless act" of involuntary manslaughter and the specific requirement of a Vehicle Code violation of homicide by vehicle. Thus the elements of homicide by vehicle as charged are subsumed in the elements of involuntary manslaughter and neither offense requires proof which the other does not.[15] Because imposing separate sentences violates double jeopardy, the two offenses merge for sentencing purposes. As our decision in *Houtz* is consistent with our analysis in *Anderson*, the Superior Court erred in disregarding it.

In summary, we affirm in part and reverse in part the order of the Superior Court. The judgments of sentence as to aggravated assault and homicide by vehicle are hereby vacated; as to involuntary manslaughter, the judgment of sentence is affirmed.

CASTILLE, J., files a Dissenting Opinion in which NEWMAN, J., joins.

CASTILLE, Justice, dissents.

I respectfully dissent because I believe that there was sufficient evidence under the facts of this case to sustain appellant's conviction for aggravated assault. The evidence demonstrates that appellant's conduct fully manifested the enhanced degree of recklessness required by the aggravated assault statute.

Appellant consumed four or five beers and an unknown quantity of muscle relaxants or "downers." [1] Appellant then got behind the wheel of a car and proceeded to a strip club on

---

**15.** We recognized in *Anderson* that "any merger analysis must proceed on the basis of its facts, some aspects of the statute are relevant while others are not." *Id.* at 582 n. 3, 650 A.2d 20.

**1.** A witness who was at the party with appellant and ingested the same type of pills testified that the pills made him feel drowsy and less alert.

Roosevelt Boulevard, a busy, urban thoroughfare. Appellant was familiar with the busy road as he had driven along it on prior occasions. Appellant drove at a rate of speed in excess of the legal limit, estimated by eyewitnesses to be between 55 and 70 miles per hour in a 45 mph zone, cutting off other cars and scraping the curb before plowing onto the sidewalk. The vehicle continued with such momentum that it severed a light pole, smashed into a SEPTA bus stop and continued some distance, carrying the entire billboard advertisement section of the bus stand structure with it. The car crossed over all the lanes of the intersecting Grant Avenue and stopped only after it crashed headlong into a brick wall. Appellant killed one person and severely injured another.

These facts clearly support that appellant engaged in reckless behavior under circumstances which manifested extreme indifference to the value of human life, as required by the aggravated assault statute. 18 Pa.C.S. § 302(a)(1); *see Commonwealth v. O'Hanlon*, 539 Pa. 478, 653 A.2d 616 (1995) (a higher degree of recklessness is required by the aggravated assault statute). Given appellant's actions, there is no question that the evidence was sufficient to prove that appellant's recklessness was such that "life threatening injury [was] essentially certain to occur." *Id.* at 482, 653 A.2d at 618.

I find the facts of this case inapposite from those in *O'Hanlon*. In *O'Hanlon*, this Court held that where the appellant did no more than drive while intoxicated and run a red light, the degree of recklessness required by the aggravated assault statute was not established. This Court found that "[s]erendipity, not intention, placed the victim in his path when he drove through the red light." *Id.* The record in *O'Hanlon* was not clear whether the appellant observed the victim's car approaching, and no evidence other than the appellant's decision to drive while intoxicated was offered to prove the degree of recklessness to support the aggravated assault conviction. Here, in addition to alcohol, appellant was under the influence of an unknown type of "downer" or muscle relaxant. The victims were visibly in the open waiting for the bus. Appellant, who was familiar with the busy road, should have antici-

pated the presence of other cars and pedestrians and should have known that his careless, daredevil driving while under the influence of numerous substances was likely to inflict serious injury on others. The matter *sub judice* is indistinguishable from *Commonwealth v. Scofield*, 360 Pa.Super. 552, 521 A.2d 40 (1987), *alloc. denied* 517 Pa. 593, 535 A.2d 82 (1987), in that the conduct of the driver therein was basically equivalent to that of appellant herein. The majority's attempts to distinguish the two factual situations constitutes a distinction without a difference.

Accordingly, I dissent to that portion of the majority's opinion that finds insufficient evidence to support appellant's conviction for aggravated assault.

NEWMAN, J., joins this dissenting opinion.