J-E03004-23

2024 PA Super 171

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
KEVIN R. PETERS :
:
Appellant : No. 2591 EDA 2021

Appeal from the Judgment of Sentence Entered October 15, 2021
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0003901-2020

BEFORE: PANELLA, P.J., LAZARUS, J., STABILE, J., DUBOW, J.,
KUNSELMAN, J., NICHOLS, J., MURRAY, J., McLAUGHLIN, J., and
KING, J.

DISSENTING OPINION BY LAZARUS, J.: **FILED AUGUST 7, 2024**

I respectfully dissent from the learned Majority's conclusion that the Commonwealth presented sufficient evidence to establish the requisite malice for Peters' convictions of third-degree murder and aggravated assault – serious bodily injury. In my view, the Commonwealth failed to present sufficient evidence of malice under our case law and, accordingly, I would vacate those convictions.

The Majority accurately represented the factual and procedural history of this case. *See* Majority, at 1-7. However, I disagree with the Majority's stated standard of review, particularly with regard to the manner in which the Majority defines and applies malice in the context of third-degree murder and aggravated assault – serious bodily injury. *See* Majority, at 8-24.

A person commits aggravated assault – serious bodily injury when he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly[,] or recklessly under circumstances manifesting an extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1).

The Crimes Code defines third-degree murder as "[a]ll other kinds of murder" other than first- and second-degree murder and classifies it as "a felony of the first degree." *Id.* at § 2502(c). To sustain a conviction of third-degree murder, the Commonwealth must prove that the defendant killed another person with malice. *Commonwealth v. Hardy*, 918 A.2d 766, 774 (Pa. Super. 2007). "Third[-]degree murder occurs when a person commits a killing [that] is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice." *Commonwealth v. Truong*, 36 A.3d 592, 597 (Pa. Super. 2012) (en banc) (citation omitted). Malice is a legal term, which encompasses "not only a particular ill-will, but every case where there is a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." *Commonwealth v. Packer*, 168 A.3d 161, 168 (Pa. 2017) (citation omitted). A fact-finder may find malice not only in an intentional killing, "but also in an unintentional homicide where the perpetrator consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily

injury." ***Commonwealth v. Ludwig***, 874 A.2d 623, 632 (Pa. 2005) (quotation and citation omitted).

The malice requirements for aggravated assault and third-degree murder are the same. ***Packer***, 168 A.3d at 168. The malice required to sustain a third-degree murder or aggravated assault conviction exists "where the accused acts in gross deviation from the standard of reasonable care, failing to perceive that such actions might create a substantial and unjustifiable risk of death or serious bodily injury." ***Commonwealth v. Mercado***, 649 A.2d 946, 955 (Pa. Super. 1994) (citation omitted). "In view of this heightened *mens rea*, motor vehicle crashes seldom give rise to proof of the malice needed to sustain a conviction for third[-]degree murder[.]" ***Commonwealth v. Kling***, 731 A.2d 145, 148 (Pa. Super. 1999). "However, in some circumstances, the malice requirement has been met, and this [C]ourt has not hesitated to uphold an aggravated assault or a third[-]degree murder charge depending on the particular facts of a motor vehicle crash." ***Commonwealth v. Riggs***, 68 A.3d 780, 785 (Pa. Super. 2012).

In the context of a DUI, the decision to drive while under the influence of alcohol and/or a controlled substance, standing alone, does not constitute malice. ***Commonwealth v. O'Hanlon***, 653 A.2d 616, 618 (Pa. 1995). This type of crime "requires a higher degree of culpability, i.e., that which considers and then disregards the threat necessarily posed to human life by the offending conduct," and entails "an element of deliberation or conscious

disregard of danger[.]" *Id.* "For th[is] degree of recklessness . . . to occur, the offensive act must be performed under circumstances [that] **almost assure that injury or death will ensue**." *Id.* (emphasis added). "The recklessness must, therefore, be such that **life threatening injury is essentially certain to occur**." *Id.* (emphasis added). "This state of mind is, accordingly, equivalent to that which seeks to cause injury." *Id.* This *mens rea* requirement is met only in circumstances where "the defendant could reasonably anticipate that serious bodily injury or death would be the likely and logical consequence of his actions . . . [but that] consequence was ignored." *Packer*, 168 A.3d at 170-71 (reaffirming distinction between ordinary recklessness and malice).

Pennsylvania courts have frequently had occasion to address the concept of "malice" as applied in the context of DUI-related motor vehicle accidents. Our Supreme Court previously announced the requisite degree of malice and recklessness, described above, in *O'Hanlon*, *supra*, and *Commonwealth v. Comer*, 716 A.2d 593 (Pa. 1998), and recently reaffirmed the standard in *Packer*, *supra*. In *Packer*, our Supreme Court addressed this "notice," or "warning,"[1] requirement of malice with respect to motor vehicle accidents, noting:

---

[1] I use "notice" or "warning" as shorthand to refer to the malice standard which, as stated throughout this opinion, is met when a perpetrator consciously disregards an unjustified or extremely high risk that his actions
*(Footnote Continued Next Page)*

Packer huffed [Dust-Off, containing] DFE [(difluoroethane)] immediately prior to and while operating a vehicle on a public highway. She knew, from the clearly marked label and the bittering agent added to the Dust-Off, that this product was not intended to be ingested. She further knew, **from her numerous prior experiences with huffing, that the effects of DFE on her were immediate, debilitating**[,] **and persisted for ten to fifteen minutes following inhalation. Moreover, she knew that huffing had caused her to lose consciousness on other occasions in the past.**

With all of this knowledge of DFE and the immediate and overwhelming effects it had on her, she nonetheless made the conscious and informed decision to huff four or five bursts of DFE, inhaling the chemical for a total of fourteen to twenty-four seconds within a five-minute timespan. She inhaled immediately before driving on a public roadway and again while temporarily stopped [at] a red light. Precisely what had previously occurred after huffing happened to her again on the night in question—after inhaling her final bursts of DFE at the red light and proceeding to drive her vehicle on the public highway, she lost consciousness. Predictably, without control of her vehicle, she killed [the victim].

Viewing the evidence, as we must, in the light most favorable to the Commonwealth, her awareness of the particular dangers her conduct posed is further demonstrated by her behavior before and after the accident. The record reflects that after huffing in the Walmart parking lot, but before driving, she paused to ask [her fiancé] how much he trusted her. . . . [I]mmediately following the accident (after she regained consciousness), she lied about what happened, asked about the detectability of DFE in her bloodstream, and repeatedly asked if she was going to jail.

This is not a typical case of ordinary recklessness that arises when someone chooses to drive while intoxicated. Packer consciously disregarded an unjustified and extremely high risk that her chosen course of action might cause a death or serious bodily injury. **Because of Packer's history of losing consciousness after huffing and her knowledge of the immediacy of the effects**

---

are almost certain to cause death or serious bodily injury. *See Commonwealth v. Young*, 431 A.2d 230, 232 (Pa. 1981); *see also O'Hanlon*, 653 A.2d at 618; *Packer*, 168 A.3d at 170-71.

**of huffing on her**, she "could reasonably anticipate that serious bodily injury or death would be the likely and logical consequence of [her] actions . . . [but] the consequence was ignored."

*Packer*, 168 A.3d at 171 (emphasis added) (citations omitted).

In *Comer*, the defendant drove after drinking and ingesting "muscle relaxers." *See Comer*, 716 A.2d at 595. The defendant was observed, just prior to the crash, scraping his right tire against the curb, exceeding the speed limit, veering off the road, and crashing through a bus stand and into a brick wall. *Id.* He struck two pedestrians in the process, killing one and seriously injuring the other. *Id.*

Our Supreme Court concluded that the evidence in *Comer* did **not** support a finding of malice. The Court stated that "[w]hile [a]ppellant's actions are clearly criminal, they do not constitute aggravated assault." *Id.* at 596. Notably, the Court determined that after examining the defendant's behavior before and after the accident, there was no evidence "that he was aware of his reckless conduct" or that he "considered, then disregarded, the threat to the life of the victim." *Id.* at 596-97.

After our Supreme Court decided *Comer*, this Court, in *Commonwealth v. Dellavecchia*, 725 A.2d 186 (Pa. Super. 1998), addressed a similar scenario. In *Dellavecchia*, the defendant, with a blood alcohol content (BAC) of .194%, drove his truck at excessive speeds while weaving in and out of city traffic. *Id.* at 189. The defendant's truck collided with a parked Chevrolet Camaro at such a high speed that the defendant's truck went airborne and landed on a nearby Toyota Camry, flipped over, and

landed on its roof. *Id.* at 186. The defendant was charged with aggravated assault – serious bodily injury. *Id.*

This Court determined that the Commonwealth had failed to present sufficient evidence to sustain the malice requirement of aggravated assault – serious bodily injury. *See id.* at 188-89. We stated:

> Notwithstanding the Commonwealth's efforts, we are not persuaded that the facts presented here are materially distinguishable from those presented in *Comer* so as to compel a different result. Like Comer, [a]ppellant drove at an excessive rate of speed over congested city streets, weaving in and out of traffic, prior to the crash. Also like the defendant in *Comer*, [a]ppellant was under the influence of intoxicating substances, as he stipulated at trial to the fact that he had a [BAC] of .194%. If anything, the conduct in *Comer* **was more egregious in that Comer made no attempt to apply his brakes or reduce his speed prior to striking the pedestrians. Appellant, however, did apply his brakes in an effort to avoid impact.**

*Id.* at 189 (emphasis added, footnotes and citations omitted).

Since *Comer* and *Dellavecchia*, this Court has repeatedly emphasized that, in order to satisfy the heightened *mens rea* requirement of third-degree murder and aggravated assault – serious bodily injury, there **must** be additional factors present. *See, e.g.*, *Commonwealth v. Dunphy*, 20 A.3d 1215 (Pa. Super. 2011) (malice found when defendant, driving intoxicated at close to twice posted speed limit, saw pedestrians in crosswalk but sped up to "make the light," struck and killed pedestrian, and fled after impact); *Commonwealth v. Allen*, 833 A.2d 800 (Pa. Super. 2003) (malice present where defendant hit guardrail before accident but kept driving for two miles

with victim impaled on defendant's car and continued for five more miles after body rolled off).

As noted above, malice, in the DUI context, requires that the recklessness exhibited must involve an awareness that the conduct is **essentially certain** to cause the death or serious bodily injury. *See O'Hanlon*, *supra*; *Packer*, *supra*. It is insufficient to prove that someone's bad decisions **could have, may have**, or **likely would** result in death or serious bodily injury. *O'Hanlon*, *supra*; *Packer*, *supra*. Instantly, the trial court's opinion omits mention of this essential requirement, and the Commonwealth appears to ignore it as well, encouraging this Court to view the facts under an inappropriate standard of malice. *See* Trial Court Opinion, 3/4/22, at 1-12; Commonwealth's Brief, at 25-27.[2]

Additionally, I observe that Peters' decision to drive his vehicle instead of taking a train or taxi, and to use a highway rather than a local road, is of no moment. Indeed, our law is clear that the mere decision to drive intoxicated does not satisfy the malice requirement. If these factors met the requirement of malice, then every DUI homicide would result in a third-degree murder conviction. I emphasize that driving drunk in and of itself does not

---

[2] The Commonwealth suggests that the proper analysis of malice is whether Peters' actions "might" create a risk of death or serious bodily injury and that Peters should have "reasonably anticipate[d]" that death or serious bodily injury would "likely" result" from his actions. *See id.* at 26. In my view, this interpretation of the law is incorrect and represents a significant departure from the  heightened burden that Pennsylvania courts have routinely required. *See Packer*, *supra*; *O'Hanlon*, *supra*.

meet the heightened *mens rea* requirement outlined in ***O'Hanlon*** and ***Comer*** and reaffirmed in ***Packer***.

Consequently, Peters' decisions throughout the day, including, his decision to drive to work when there was a work event involving alcohol, his decision not to take the train home, his decision not to find a hotel or motel to spend the night, and his failure to call for a ride, are merely decisions that coincide with drunk driving. ***See O'Hanlon***, ***supra***. Those decisions, while reckless and ill-advised, do **not** demonstrate the type of malice that our law requires the Commonwealth to prove.

In my view, the facts of this case reveal that the Commonwealth failed to present sufficient evidence of the "warning" requirement of malice necessary for third-degree murder and aggravated assault in the DUI context. Peters' inability to operate the parking garage kiosks is not a "warning" contemplated by our case law. ***See Commonwealth v. Urbanski***, 627 A.2d 789, 793 (Pa. Super. 1993) (concluding appellant's wife's repeated reminders of danger of drunk driving and repeated requests he let her drive instead, conveyed sufficient warning for malice). Additionally, the record is silent on whether Peters had a history of drunk driving. ***See Packer***, ***supra*** (defendant's personal knowledge that inhaling DFE caused defendant to black out previously while driving and asking if fiancé "trusted her," exhibited conscious disregard for almost certain death or serious bodily injury). Moreover, the Commonwealth's urging that the malice requirement is satisfied

because "every adult" knows the dangers of alcohol is similarly unavailing.[3]

Indeed, as I stated and emphasize above, driving while intoxicated by itself

does not create the requisite malice for third-degree murder or aggravated

assault serious bodily injury. *See Packer*, *supra*; *Comer*, *supra*; *O'Hanlon*,

*supra*.

Additionally, the two 911 reports of Peters' driving are meaningless

under the facts of this case. Neither of those phone calls communicated the

warning to Peters himself, and neither driver testified that he warned Peters.

Indeed, Hafto, the first 911 caller, testified that he observed Peters' vehicle

pass him at a high rate of speed. *See* N.T. Jury Trial Day 1, 9/13/21, at 139-

40. In response, Hafto stayed behind the Mazda and gave it a wide berth.

*Id.* Hafto testified that as he traveled behind the Mazda, it drove both over

and under the posted speed limit of 65 miles per hour. *Id.* at 152-53. Hafto

drove in such a way that kept the Mazda in front of him at all times. *Id.* at

151-53 (Hafto testifying that he would decrease speed to avoid passing

---

[3] Merely knowing the dangers of consuming alcohol and driving does not satisfy the malice requirement of third-degree murder and aggravated assault – serious bodily injury. Our Supreme Court's recent decision in *Packer* is enlightening in this regard. As I emphasized above, it was not Packer's general knowledge that inhaling DFE was harmful or dangerous that caused her *mens rea* to rise to that of malice. *See Packer*, *supra*. Rather, it was Packer's **personal knowledge of the specific effect DFE had on her due to her prior experiences with DFE and the immediate and debilitating effect it had on her**. *Id.* Similarly, merely knowing that consuming alcohol and driving is dangerous does not satisfy the heightened malice requirement for third-degree murder and aggravated assault – serious bodily injury. *See O'Hanlon*, *supra*; *Packer*, *supra*.

Mazda). Emrick, the second 911 caller, initially testified that the Mazda was driving erratically and, in the 911 phone call recording, stated that the vehicle's lights were off. *See* N.T. Jury Trial Day 2, 9/14/21, at 7-8; *id.* at 13 (Commonwealth Exhibits 3 and 4, Emrick's 911 call, admitted into evidence).[4] However, Emrick also testified that the Mazda exited the highway safely. *Id.* at 10. These phone calls certainly portrayed Peters' driving as negligent, careless, and reckless at times. Nevertheless, I emphasize that neither of these drivers attempted to communicate to Peters that he was driving erratically. *See* N.T. Jury Trial Day 1, 9/13/21, at 138-55 (Hafto's testimony); N.T. Jury Trial Day 2, 9/14/21, at 5-26 (Emrick's testimony); *see also Commonwealth v. Pigg*, 571 A.2d 438, 442 (Pa. Super. 1990) (finding of malice supported where defendant, operating 18-wheeler, drove other drivers off road and ignored requests of fellow driver to stop driving).

Furthermore, Jacquelyn Smith's offer of a ride home also fails to satisfy the warning requirement of malice. Smith testified that she offered a ride to **every** co-worker at the party. *See* N.T. Jury Trial Day 2, 9/14/21, at 114-15. Smith also testified that, although she arrived late to the work party, she too **was drinking alcohol**. *Id.* at 108-13 (Smith testifying that between her arrival at 6:30 p.m. and her departure at 10:00 p.m., everyone ordered at least three drinks). Additionally, even though Smith offered Peters a ride, she

---

[4] Emrick's 911 call was divided into two exhibits because, during Emrick's phone call, he crossed over the state line into New Jersey and his call was transferred to New Jersey's 911 service. *See id.* at 11-12.

did not caution Peters that he had consumed too much alcohol or warn him not to drive. *Id.* at 114-16 (Smith testifying she offered Peters a ride because they both lived in Bucks County and she did not offer to drop him off at train station or any other alternative). Under these facts, I cannot conclude that Smith's actions warned Peters of his inability to drive.[5] *See Urbanski*, *supra*.

Further, Corporal Glad, the Commonwealth's accident reconstruction expert, testified that Peters **applied his brakes before the collision**. *See* N.T. Jury Trial Day 3, 9/15/21, at 40-123 (Commonwealth expert testifying regarding speed of vehicles and "black box" recordings). Corporal Glad testified that the Mazda's "black box" recorded speeds in excess of 100 miles per hour just prior to the crash. *Id.* at 90-91 (Mazda approached speed of 115 miles per hour approximately one second before impact). Approximately four-tenths of a second prior to the crash, the Mazda's "black box" also recorded "weight" being released from the accelerator pedal and "weight" being applied to the brake pedal. *Id.* at 91-92. Corporal Glad explained that

---

[5] I note that this "warning" or "notice" requirement is not limited to one form. Indeed, it can arise from the defendant's own past experience, *see Packer*, *supra*, from the words of others, *see Urbanski*, *supra*; *Pigg*, *supra*, or from the circumstances of the particular case, *see Dunphy*, *supra*; *Allen*, *supra*. I observe that, in *Dunphy*, despite the Majority's contentions to the contrary, this "warning" or "notice" requirement took the form of the appellant **seeing pedestrians crossing the street in front of him**. Despite having been warned of the presence of people in the roadway, **he sped up and struck a pedestrian**. *See Dunphy*, 20 A.3d at 1217.

The facts of the instant case simply do not support a finding of malice as detailed ***supra*** and ***infra***.

this data indicates that the brakes were applied just prior to the crash. *Id.* Thus, it is clear from the evidence that Peters applied the brakes, albeit, quite literally, at the last second. *See Dellavecchia*, 725 A.2d at 189 (Commonwealth presented insufficient evidence of *mens rea* element of recklessness for aggravated assault where defendant drove at excessive speeds, wove in and out of congested city traffic, had BAC of .194%, but applied brakes prior to accident "in an effort to avoid impact").[6, 7]

_____

[6] I would echo this Court's prior statement in *Dellavecchia* that, notwithstanding the Commonwealth's efforts, there is simply no evidence in this case to overcome the heightened *mens rea* malice requirement for third-degree murder and aggravated assault – serious bodily injury. *See id.* ("As an intermediate appellate court, we are bound to apply the decisions of our Supreme Court absent a legally relevant distinction."). In my view, this Court should leave it up to our Supreme Court or the legislature to review the issue of drunk driving deaths and injuries for a determination of whether a change in the definition of malice is warranted, as it relates to such behavior. Simply put, this Court cannot disregard Peters' application of the brakes as one fact that disproves the requisite malice to sustain his convictions. *See Dellavecchia*, *supra*.

[7] Moreover, I observe that, although not relied upon expressly by the Majority, the Commonwealth argues that because Peters' vehicle lights were off, he was consciously disregarding a known risk to other drivers. *See* Commonwealth Brief, at 37-38, 41, 43, 47-48, 56. This contention has no bearing on a determination of malice in this case. It is clear, from my review of the record, that Peters was never alerted to any issues with his lights. After the accident, Trooper Robert Ace investigated Peters' Mazda and concluded that the headlight switch was in the "on" position, and that the damage from the accident prevented an accurate assessment of whether the brake lights were operable. *See* N.T. Jury Trial Day 3, 9/15/21, at 22-28. Before the accident, while both Hafto and Emrick testified that at various points it appeared as though Peters' headlights were off, neither warned Peters. *See* N.T. Jury Trial Day 1, 9/13/21, at 138-55; N.T. Jury Trial Day 2, 9/14/21, at 5-26. Additionally, in every video the Commonwealth presented of Peters' driving,
*(Footnote Continued Next Page)*

Thus, based upon this Court's prior decision in **Dellavecchia**, I would conclude that Peters' application of the brakes prior to the accidents tends to show that he was **trying to avoid a collision**, unlike virtually every other DUI-related third-degree murder. **See Dellavecchia**, **supra**; **Dunphy**, **supra**; **Packer**, **supra**; **Allen**, **supra**. In other words, Peters' application of the brakes shows that he **lacked the requisite malice to sustain these convictions**. Consequently, even if Peters' prior actions and decisions somehow amounted to the requisite malice, which I maintain **they do not**, then Peters' application of his brakes should certainly break that chain of "sustained recklessness." **See Kling**, **supra**.

---

his headlights were on and illuminated. **See** N.T. Jury Trial Day 3, 9/15/21, at 182-88, 196-97 (Trooper Brandon Corby testifying regarding contents of videos recovered); Commonwealth Exhibits 43 and 44 (surveillance videos from parking garage, depicting Mazda's headlights on); Commonwealth Exhibit 42 (security video from exterior of parking garage depicting Mazda's headlights on, but brakes lights off); Commonwealth Exhibit 48 (Philadelphia street surveillance video depicting Mazda's headlights on, but brake lights off); Commonwealth Exhibits 49 and 50 (Philadelphia street surveillance stills depicting Mazda's headlights on, but brake lights off); **see also** N.T. Jury Trial Day 3, 9/15/21, at 197-200 (Trooper Corby testifying regarding Scudder-Falls Bridge videos); Commonwealth Exhibit 52 (Scudder-Falls Bridge video depicting Mazda's headlights on, but brake lights off). At best, this evidence demonstrates that Peters believed his brake lights and headlights were operable, and on, at least some of the time leading up to the accident. However, this evidence does not demonstrate Peters' awareness or conscious disregard of the failing brake lights. Accordingly, the Commonwealth's arguments regarding the brake lights does not support Peters' conviction for third-degree murder or aggravated assault – serious bodily injury.

- 14 -

The Majority urges that this case demonstrates that Peters "maliciously exhibited sustained recklessness over a considerable period of time prior to the fatal crash, despite an obvious risk of harm to other motorists and the general public." *See* Majority, at 23. In reaching its conclusion, the Majority relies upon *Dunphy* and *Kling*. *See* Majority, at 14-16, 22-24. In my view, as discussed *supra*, the facts of *Dunphy* support my conclusion that the Commonwealth failed to present sufficient evidence of the heightened mens rea malice requirement. To reiterate, in *Dunphy*, the defendant, who was already driving at twice the speed limit, **saw the pedestrians in the crosswalk and then sped up**. *See Dunphy*, *supra*. After the defendant in *Dunphy* collided with the victim, the victim "fl[ew] into the air, land[ed] on the hood of his truck, fl[ew] of[f of] the truck, and then land[ed] on the street," after which the defendant **fled the scene**. *See id.* at 1217. The facts of *Dunphy* are clearly distinguishable from the instant case. As highlighted above, there is evidence that Peters was traveling below the speed limit at times, and above the speed limit at other times. Furthermore, the Commonwealth presented evidence that Peters **attempted to apply the brakes**, which tends to indicate that **Peters saw the victims and tried to avoid a collision**. *See Dellavecchia*, *supra*. Moreover, Peters did not attempt to flee the scene.

In *Kling*, this Court addressed whether extremely reckless street racing rose to the requisite level of malice for third-degree murder. *See Kling*, 731 A.2d at 146-47. In *Kling*, the defendant began racing a fellow driver at

speeds in excess of 80 mph. *See id.* Both drivers crested over a hill and continued to accelerate downhill towards a series of "substantial curves [with] cautionary speed signs." *Id.* "Nevertheless, appellant maintained his excessive speeds, pulling away from the [other driver] and disappearing into the blind curves." *Id.* On the second blind curve, appellant was in the wrong lane of traffic and nearly struck a minivan. *See id.* Yet, the appellant continued to accelerate and "neither slowed down nor took action to mitigate the obvious danger from his racing." *Id.* The appellant then entered a no-passing zone, almost striking two pickup trucks, before traveling into a "sharp double curve at nearly 70 mph, crossed the center line again, and struck a vehicle," killing the driver instantly and rupturing the 10-year-old passenger's artery. *Id.* The collision occurred less than one mile after appellant's near miss with the minivan. *See id.* While *Kling* interpreted and applied the holdings of *Comer*, *Dellavecchia*, *Urbanski*, *Pigg*, and *O'Hanlon*, it was not a DUI. *See Kling*, 731 A.2d at 147-51. Nevertheless, this Court concluded that the appellant's driving was akin to playing "Russian roulette with the other drivers." *See id.* at 150.

In my view, the only relevance *Kling* has to the instant case is the purported "near misses" of Peters driving near the witnesses Hafto and Emrick. The "sustained recklessness" described in *Kling* is distinguishable from the facts of the case before this Court. Indeed, Peters: was reported driving at speeds both below and above the posted speed limit; was seen

- 16 -

exiting the highway safely; and, both Hafto and Emrick reported driving in a way to avoid Peters. Consequently, these interactions cannot satisfy the "**sustained recklessness** by a driver in the face of an **obvious risk of harm** to his victims,**"** *id.* at 149 (emphasis in original), like that exhibited by the appellant in *Kling*. I note that the appellant in *Kling*, engaged in a high-speed street race for almost one mile along a series of blind-switchback turns. *See id.* at 147-48. He did not, at any point, exhibit a concern for others or attempt to slow down. *See id.* It is clear that the behavior exhibited in *Kling* demonstrated the requisite malice. Accordingly, in my view, *Kling* is factually distinguishable from the present circumstances, and I am unpersuaded by the Majority's contentions to the contrary.

For all the foregoing reasons, I conclude that the Commonwealth presented insufficient evidence to sustain the malice requirement of either third-degree murder or aggravated assault – serious bodily injury. *Smith*, *supra*. Even considering the totality of the circumstances, I would find this Court is constrained to reverse these convictions. While the facts of this case are horrific and heartrending, they simply do not support a finding of malice under the precedent by which this Court is bound. Further, because this case is substantially similar to *Dellavecchia*, I would further conclude that the evidence was insufficient to establish that Peters possessed a state of mind equivalent to that which seeks to cause serious bodily injury or death. Accordingly, I respectfully dissent, and would reverse and vacate Peters'

convictions of third-degree murder and aggravated assault – serious bodily injury.

Judges Dubow, Kunselman, McLaughlin join Dissenting Opinion.