COMMONWEALTH of Pennsylvania,
Appellee,

v.

Michael RIPPY, Appellant.
(Two Cases).

Superior Court of Pennsylvania.

Submitted Dec. 8, 1998.
Filed April 8, 1999.

Robert M. Rosenblum, Stroudsburg, for appellant.

Lisa A. Gillick, Asst. Dist. Atty., Scranton, for Commonwealth, appellee.

Before DEL SOLE, STEVENS and ORIE MELVIN, JJ.

STEVENS, J.:

¶ 1 This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Lackawanna County following Appellant's conviction on one count of possession with the intent to deliver a controlled substance, one count of possession of a controlled substance, two counts of criminal conspiracy, one count of theft by unlawful taking, one count of receiving stolen property, and one count of unauthorized use of an automobile. Herein, Appellant contends that the evidence was insufficient to support his convictions and that his sentence was illegal. We affirm Appellant's convictions, but vacate the judgment of sentence and remand for resentencing consistent with this decision.

¶ 2 Appellant's first contention is that the evidence was insufficient to support his convictions. "In reviewing the sufficiency of the evidence, we view all the evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable the jury to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Thomas*, 522 Pa. 256, 260, 561 A.2d 699, 702 (1989) (citation omitted). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Sanders*, 426 Pa.Super. 362, 627 A.2d 183, 185 (1993) (citation omitted). Although a conviction must be based on "more than

mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty." *Commonwealth v. Badman*, 398 Pa.Super. 315, 580 A.2d 1367, 1372 (1990) (citation omitted).

¶ 3 Using the aforementioned standard, the evidence adduced at trial discloses the following. On July 9, 1997, Appellant was arrested and charged with various drug-related crimes. Following the denial of his pre-trial motion, Appellant proceeded to a jury trial on February 10, 1998. At trial, Dawn Marie Lee testified as follows: Ms. Lee and her child lived at 532 Emmett Street in Scranton, Pennsylvania, and, during June and July of 1997, Appellant and his friend, Tony, lived with Ms. Lee. While living with Ms. Lee, Appellant and Tony often brought drugs into the house and often dealt drugs on Ms. Lee's front porch. On at least two occasions, Ms. Lee observed Appellant and Tony packaging crack cocaine in small baggies. Ms. Lee was concerned about the drugs being in her house and, at some point, she asked Appellant to remove the drugs. Ms. Lee watched as Appellant took the drugs out to the backyard. While Appellant was living with Ms. Lee, he kept three pit bulls chained in the backyard near a concrete slab upon which a garage once stood. Neighbors would not go near the pit bulls or the concrete slab because they were afraid of the dogs.

¶ 4 Detective Robert Mazzoni also testified at the trial. Specifically, he testified that from July 6 to July 8, 1997, he and his partner, Detective Michael Conrad, watched the residence located at 532 Emmett Street. During this time, the detectives noticed an unusual amount of people going into and out of the residence. As a result, on July 8, 1997, the detectives approached Ms. Lee's residence and, when Ms. Lee answered the door, the detectives asked for permission to search her house. Ms. Lee consented to the search; she specifically consented to Detective Mazzoni's request to search under the master bed. Thereunder, Detective Mazzoni found a shoe box containing Appellant's photo identification, checks from Appellant's personal checking account, and approximately thirty baggies used to package crack cocaine. After speaking with Ms. Lee concerning Appellant's drug activities while living at 532 Emmett Street, Detective Mazzoni decided to search Ms. Lee's backyard. In particular, he decided to search in the area of a concrete slab because Ms. Lee informed him that was the area where she saw Appellant going with the drugs which were removed from her house. During his search, Detective Mazzoni found two baggies, each containing ninety-nine packets filled with rock cocaine, and one large rock of cocaine, weighing forty grams, which had not yet been cut for sale.

¶ 5 Ms. Lee's father, William Lee, Sr., and her brother, William Lee, Jr., were the next to testify. The men testified that they were co-owners of a Chrysler LeBaron, which was discovered missing on July 5, 1997. Both men testified that they never gave anyone permission to drive the vehicle and that, when they spoke to Appellant on the telephone, they asked him whether he had taken the vehicle and Appellant answered affirmatively. William Lee, Jr. testified that the vehicle was parked in front of Ms. Lee's house just prior to its disappearance and that a spare set of keys was left at Ms. Lee's house.

¶ 6 On July 8, 1997, the Lees reported that the Chrysler LeBaron had been stolen. On July 9, 1997, Police Officer Thomas Passmore observed Appellant driving the subject vehicle in Scranton. After stopping the vehicle, Officer Passmore detained the vehicle's occupants, Appellant and his "new" girlfriend, until Detective Mazzoni arrived on the scene. Appellant was then arrested.

¶ 7 At the conclusion of Appellant's trial, he was convicted on all charges. He was then sentenced to five to ten years imprisonment on his possession with the intent to deliver conviction and five to twenty years imprisonment for conspiracy, the sentences to run consecutively. With regard to his possession conviction, Appellant was sentenced to one to two years

imprisonment, the sentence to run concurrently to the above sentences, and one to two years imprisonment for conspiracy, the sentence to run concurrently to the above sentences. Appellant was sentenced to one to two years imprisonment for his unlawful taking conviction, one to two years imprisonment for his receiving stolen property conviction, and six months to twelve months imprisonment for his unauthorized use of an automobile conviction, all of the sentences to run concurrently to the above sentences. This timely appeal followed.

¶ 8 Appellant's first argument is that the evidence was insufficient to support his conviction for possession and possession with the intent to deliver a controlled substance.[1] Specifically, he contends that the Commonwealth failed to prove that he possessed the crack cocaine seized from Ms. Lee's backyard.

¶ 9 Possession of a controlled substance can be proven by showing that a defendant actually possessed drugs through direct evidence, such as finding the controlled substance on the defendant's person, or it can be proven by showing that the defendant constructively possessed a controlled substance. *Commonwealth v. Macolino*, 503 Pa. 201, 469 A.2d 132 (1983). In the case *sub judice*, Appellant was not found in actual possession of the crack cocaine, and, therefore, the Commonwealth was required to show that Appellant constructively possessed the drugs.

> [The Supreme Court] ... has defined constructive possession as the 'ability to exercise conscious dominion over the illegal substance; the power to control the contraband and the intent to exercise that control.' Constructive possession may be found in one or more actors where the item is in an area of joint control and equal access. [The Su-

preme Court] has determined that '[a]n intent to maintain a conscious dominion may be inferred from the totality of the circumstances ....[and], circumstantial evidence may be used to establish a defendant's possession of drugs or contraband.'

*Commonwealth v. Valette*, 531 Pa. 384, 388–389, 613 A.2d 548, 549–550 (1992)(quotations omitted). "Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." *Commonwealth v. Mudrick*, 510 Pa. 305, 306, 507 A.2d 1212, 1213 (1986).

> [Moreover,] where more than one person has equal access to where drugs are stored, presence alone in conjunction with such access will not prove conscious dominion over the contraband. [Rather], the Commonwealth must introduce evidence demonstrating either Appellant's participation in the drug-related activity or evidence connecting Appellant to the specific room or areas where the drugs were kept.

*Commonwealth v. Ocasio*, 422 Pa.Super. 272, 619 A.2d 352, 354–355 (1993) (citations, quotation, and emphasis omitted).

¶ 10 Here, the evidence revealed (1) that packaged crack cocaine was found in the backyard of a house where Appellant was residing, (2) that Appellant kept three pit bulls in the vicinity of the drugs, (3) that, although the backyard was not "fenced in," neighbors and members of the public did not go in Ms. Lee's backyard because they were afraid of the pit bulls, (4) that Appellant kept his car parked in the backyard, (5) that Appellant dealt drugs from the subject house and was seen with the crack cocaine immediately prior to it being hidden in the backyard, (6) that Ms. Lee asked Appellant to remove the crack cocaine from her house, (7) that Ms.

---

1. In proving that Appellant was guilty of possession of crack cocaine, the Commonwealth was required to show that Appellant knowingly and intentionally possessed the drugs. In proving that Appellant was guilty of possession with the intent to deliver crack cocaine, the Commonwealth was required to show that Appellant possessed the crack cocaine and that he had the requisite intent. 35 P.S. § 780–113(a)(30). On appeal, Appellant challenges the possession element only.

Lee observed Appellant as he left the house with the crack cocaine and entered the back yard, and (8) that Ms. Lee saw Appellant with the crack cocaine in the vicinity of the concrete slab.

¶ 11 Examining all of the evidence in its totality, we find that the jury could reasonably conclude that Appellant was aware of the crack cocaine located in Ms. Lee's backyard, that he exercised a conscious dominion over the illegal substance, and that he intended to exercise control over the crack cocaine. We note that Appellant argues that the Commonwealth failed to show that he constructively possessed the crack cocaine since he was not in Scranton when the police seized the drugs. Appellant has cited no authority supporting this contention, and, after a thorough analysis, we conclude that Appellant's physical locality at the time of the search and seizure is not controlling as to whether Appellant constructively possessed the drugs.

¶ 12 Appellant's next sufficiency claim is that the evidence was insufficient to prove that he conspired with Tony to possess or possess with the intent to deliver crack cocaine on or about July 8, 1997. Essentially, Appellant acknowledges that he may have been an active participant in a conspiracy to possess and possess with the intent to deliver cocaine prior to July 4, 1997, when he and Tony were selling drugs from Ms. Lee's front porch; however, he argues that the conspiracy ended when he left Scranton on July 4, 1997 and that there is no evidence that he and Tony conspired with regard to the drugs at issue. Assuming, *arguendo,* that the language "on or *about* July 8, 1997" does not include Appellant's active participation in the conspiracy just prior to July 4, 1997, when he was dealing drugs from Ms. Lee's front porch, we find that the evidence was sufficient to conclude that Appellant conspired to possess and possess with the intent to deliver the crack cocaine at issue on July 8, 1997.

¶ 13 In order to convict Appellant of criminal conspiracy, the Common-wealth was required to prove that Appellant (1) entered an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent, and (3) an overt act was done in furtherance of the conspiracy. *Commonwealth v. Johnson,* 719 A.2d 778 (Pa.Super.1998).

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariable extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct can create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

*Johnson,* 719 A.2d at 784 (quotations and citations omitted).

¶ 14 At trial, Ms. Lee testified that near the end of June of 1997 she observed Tony and Appellant as they prepared the one hundred and ninety eight packets of crack cocaine, which were seized by the police. She also testified that she asked both men to remove the drugs from her house, that Appellant took the drugs out of the house, and that the "drugs ended up in the backyard." Ms. Lee further testified that Tony and Appellant had packaged drugs together and had sold the drugs on her front porch in the past. Based on this evidence, we find that the evidence was sufficient to sustain Appellant's conviction for criminal conspiracy.

¶ 15 We note that, as indicated earlier, Appellant argues that the evidence revealed that the conspiracy between him and Tony had ended prior to July 4, 1997,

when he left Scranton. To support his argument, Appellant notes that he left the Scranton area, that prior to July 8, 1997 he removed his pit bulls from Ms. Lee's back yard, that Ms. Lee asked him to cease dealing drugs, and that Appellant was not observed dealing drugs by Ms. Lee following her request. We conclude that this evidence does not warrant a contrary conclusion. The fact Appellant left the Scranton area for a short period of time does not suggest that the conspiracy at issue had ended since it is clear that Appellant returned after being gone for only four days, that he left his clothes and shoes at Ms. Lee's house, and that Appellant told Ms. Lee that he was leaving Scranton for a short period of time. In addition, Ms. Lee testified that Appellant removed his pit bulls from the backyard because the landlord required him to do so. Finally, the fact that Ms. Lee asked Appellant to cease · dealing drugs and the fact that Appellant was not observed dealing drugs by Ms. Lee or during the police's surveillance does not require the conclusion that Appellant was no longer an active participation in the conspiracy. Appellant was charged with possession and possession with the intent to deliver crack cocaine; he was not charged with actual delivery of the drugs.

¶ 16 Appellant's final sufficiency claim [2] is that the evidence was insufficient to sustain his convictions for theft by unlawful taking or disposition, 18 Pa.C.S.A. § 3921, and receiving stolen property, 18 Pa.C.S.A. § 3925, with regard to the Lees' vehicle.[3] Section 3921 provides that "[a] person is guilty of theft if he unlawfully takes, or exercises control over, movable property of another with intent to deprive him thereof." [4] Section 3925 provides that "[a] person is guilty of theft if he intentionally receives, retains, or disposes of mova-

ble property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner."

¶ 17 In this case, Appellant does not dispute that the evidence is sufficient to prove that he used the Lees' vehicle without permission. However, he argues that the evidence is insufficient to prove the crimes enunciated in Sections 3921 and 3925 since he did not intend to deprive the Lees of their vehicle and he intended to restore the vehicle to the Lees.

¶ 18 The evidence revealed that the Lees discovered the vehicle missing on July 4, 1997, and that, on July 5, 1997, William Lee, Senior and Junior spoke to Appellant on the telephone. After being questioned by the Lees, Appellant admitted that the vehicle was in his possession, but told the Lees that he was unable to return the vehicle immediately because Appellant was involved in an accident and the vehicle was damaged.[5] Appellant then indicated that the vehicle was in a garage. in New York, but that he was going to return the vehicle after it was repaired. As of July 8, 1997, the Lees had not received the vehicle, and, therefore, they reported the vehicle as stolen. On July 9, 1997, Detective Passamore received information that the vehicle at issue was reported stolen, and, on that same date, he observed the vehicle being driven in the City of Scranton. Detective Passamore stopped the vehicle, discovered Appellant's "new" girlfriend driving the car, and observed Appellant in the passenger's seat. The vehicle was severely damaged and had not been repaired. It was later discovered that Appellant did not drive the vehicle to

---

**2.** Appellant has not challenged the sufficiency of the evidence with regard to his conviction for unauthorized use of an automobile.

**3.** As indicated *supra,* the vehicle was owned by Ms. Lee's father and brother.

**4.** 18 Pa.C.S.A. § 3901 provides that "deprive" means "(1) [t]o withhold property of another

permanently or for so extended a period as to appropriate a major portion of its economic value, or with intent to restore only upon payment of reward or other compensation; or (2) to dispose of the property so as to make it unlikely that the owner will recover it."

**5.** The vehicle showed no signs of damage prior to its disappearance.

New York and that the vehicle remained in the City of Scranton from July 4–9, 1997.

¶ 19 We find that the evidence was sufficient for the jury to conclude that Appellant took the car with the intent to deprive the Lees thereof and that he did not intend to restore the car to the Lees. Appellant admitted that he had taken the vehicle only after the Lees accused him of stealing the car. Also, although Appellant told the Lees he would return the vehicle, he lied about the vehicle's location and the fact that the vehicle was being repaired. The jury was free to conclude that the vehicle was returned to the Lees only because the police were able to recover it and the jury was free to believe that Appellant lied to the Lees when he indicated that it was his intent to return the vehicle. *See Lagana v. Office of Attorney General*, 443 Pa.Super. 609, 662 A.2d 1127 (1995) (holding that where a defendant lies about the location of the missing property, it may be inferred that he intended to deprive the owners of the property). As such, a new trial is not warranted on this basis.

¶ 20 Appellant's final contention is that his sentence is illegal. Specifically, he contends that his convictions for possession and possession with the intent to deliver crack cocaine merged for sentencing purposes, and, as a result thereof, his two conspiracy convictions merged.[6] He also asserts that his convictions for theft by unlawful taking and receiving stolen property merged and that his conviction for unauthorized use of an automobile merged with the unlawful taking and receiving stolen property convictions.

6. Claims that convictions merged for sentencing purposes are challenges to the legality of sentence. *Commonwealth v. Murphy*, 405 Pa.Super. 452, 592 A.2d 750 (1991).

7. In *Williams*, the Supreme Court held that the doctrine of merger is based on an analysis of whether one offense is a lesser included offense of the other.

8. In *Weakland*, 521 Pa. at 364–65, 555 A.2d at 1233, the Supreme Court held that:

¶ 21 In reviewing Appellant's merger issues, we are guided by the Pennsylvania Supreme Court's decision in *Commonwealth v. Anderson*, 538 Pa. 574, 650 A.2d 20 (1994). In *Anderson*, the Supreme Court reaffirmed its holding in *Commonwealth v. Williams*, 521 Pa. 556, 559 A.2d 25 (1989),[7] abrogated its decision in *Commonwealth v. Weakland*, 521 Pa. 353, 555 A.2d 1228 (1989),[8] and held that in some cases merger is permitted when the actor commits a single criminal act. "The operative inquiry ... is whether the crimes involved are greater and lesser included offenses, i.e., whether the elements of the lesser included offense are a necessary subcomponent but not a sufficient component of elements of another crime." *Anderson*, 538 Pa. at 578, 650 A.2d at 22 (citation omitted). In *Commonwealth v. Comer*, 552 Pa. 527, 716 A.2d 593 (1998), the Supreme Court clarified its decision in *Anderson*, reaffirmed its holding that the underlying facts must be examined, and indicated that it must be determined whether there is a single or multiple criminal act involved. Where there is but one single act, the offenses do not merge unless one offense is a lesser-included offense of the other. *Id.*

¶ 22 Here, Appellant's convictions for possession and possession with the intent to deliver arose from one single act, the possession of the crack cocaine found in Ms. Lee's backyard. Moreover, this Court has previously held that the crime of simple possession is a lesser-included offense of possession with the intent to deliver. *Commonwealth v. Eicher*, 413 Pa.Super. 235, 605 A.2d 337 (1992).

[I]f a person commits one act of criminal violence, and that act is the sole basis upon which he may be convicted of another crime, the act will merge into the other crime. If however, the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes.

Accordingly, Appellant's possession and possession with the intent to deliver convictions merged for sentencing purposes and the trial court erred in failing to so conclude.[9] *See Commonwealth v. Harris*, 719 A.2d 1049 (Pa.Super.1998) (holding that crimes for possession and possession with the intent to deliver merge where the charges stem from the same act of possession); *Commonwealth v. Murphy*, 405 Pa.Super. 452, 592 A.2d 750 (1991) (same).

 ¶ 23 As for Appellant's convictions for receiving stolen property and unlawful taking, it is clear that the offense arose from a single criminal act. However, while the Pennsylvania appellate case law is inconsistent on this issue, the weight of authority indicates· that the crime of receiving stolen property is a lesser-included offense of theft by unlawful taking. *See Commonwealth v. Wilson*, 312 Pa.Super. 77, 458 A.2d 244 (1983) (holding that the crime of theft by receiving stolen property is a lesser included offense of theft by unlawful taking); *Commonwealth v. Yancey*, 301 Pa.Super. 427, 447 A.2d 1041 (1982) (same); *Commonwealth v. Simmons*, 233 Pa.Super. 547, 336 A.2d 624 (1975) (same). *But see Commonwealth v. Bailey*, 250 Pa.Super. 402, 378 A.2d 998 (1977) (holding that the offenses do not merge for sentencing purposes). Accordingly, we conclude that the trial court erred in failing to merge the convictions for sentencing purposes.

 ¶ 24 With regard to Appellant's conviction for unauthorized use of an automobile, we conclude that the conviction does not merge into Appellant's theft convictions. Again, we find that the offenses arose from a single criminal act; however, we find that unauthorized use is not a lesser-included offense of receiving stolen property or unlawful taking. As ·we acknowledged in *Commonwealth v. Dunlap*, 351 Pa.Super. 43, 505 A.2d 255, n. 2 (1985), this Court's decisions on the subject at

issue have not been consistent. For instance, in *Commonwealth v. Pemberth*, 339 Pa.Super. 428, 489 A.2d 235 (1985), we held that unauthorized use of a vehicle is not a lesser-included offense to receiving stolen property or theft by unlawful taking, and, in *Commonwealth v. Robinson*, 317 Pa.Super. 135, 463 A.2d 1121 (1983), we held that unauthorized use is not a lesser-included offense to receiving stolen property. However, in *Commonwealth v. Wilcox*, 310 Pa.Super. 331, 456 A.2d 637 (1993), this Court determined that unauthorized use is a lesser-included offense of receiving stolen property.

¶ 25 In *Commonwealth v. Campbell*, 351 Pa.Super. 56, 505 A.2d 262 (1986) (Rowley, J., plurality) (*en banc*),[10] the most recent Pennsylvania appellate opinion to address the subject at issue, a panel of this Court acknowledged the inconsistency in Pennsylvania's case law and analyzed the issue thoroughly applying the merger principles set forth in *Williams*, *supra*. After acknowledging that the offenses arose from a single episode, this Court applied the "lesser-included offense" analysis and concluded that the offense of unauthorized use does *not* merge into theft by unlawful taking or receiving stolen property. The *Campbell* court also specifically overruled *Wilcox*, *supra* as to this issue.

¶ 26 Although *Campbell* is a plurality decision, and, as such we are not bound by it, we find the analysis in *Campbell* to be persuasive, and the facts to be indistinguishable. As such, we conclude that the offense of unauthorized use ·did not merge into the theft crimes in this case.

 ¶ 27 Finally, with regard to Appellant's conspiracy to possess and conspiracy to possess with the intent to deliver convictions, Appellant contends that they merged for sentencing purposes. We agree.

---

9. We note that the Commonwealth does not dispute that Appellant's possession and possession with the intent to deliver convictions merge for sentencing purposes.

10. Claims that convictions merged for sentencing purposes are challenges to the legality of sentence. *Commonwealth v. Murphy*, 405 Pa.Super. 452, 592 A.2d 750 (1991).

¶ 28 18 Pa.C.S.A. § 903(c) provides that "[i]f a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship." 18 Pa.C.S.A. § 903(c).

In determining whether a single or multiple conspiracy has been established, we consider several relevant factors. The factors most commonly considered in a totality of the circumstances analysis of the single vs. multiple conspiracies issue ... are: the number of overt acts in common; the overlap of personnel; the time period during which the alleged acts took place; the similarity in methods of operation; the locations in which the alleged acts took place; the extent to which the purported conspiracies have a common objective; and, the degree to which interdependence is needed for the overall operation to succeed.

*Commonwealth v. Davis*, 704 A.2d 650, 653 (Pa.Super.1997) (citation omitted).

¶ 29 Here, we find that Appellant's and Tony's agreement encompassed both their plan to possess the rock cocaine and possess with the intent to deliver that same rock cocaine. The same acts were done to accomplish both results, the same actors took part, the acts occurred simultaneously at the same location, the same method was employed, and the same objective was pursued. We find that the facts in this case constitute the very circumstances envisioned by Section 903(c). "The essential feature of the existing conspiracy was a common plan or scheme to achieve a common, single, comprehensive goal. We conclude therefore that Appellant cannot be punished separately for each conspiracy;

multiple sentences under these circumstances are explicitly precluded by statute." *Davis*, 704 A.2d at 653–54 (citation and quotation omitted) (holding that conspiracy to commit murder and conspiracy to commit third-degree murder merged for sentencing purposes under Section 903(c)). *See Commonwealth v. Perez*, 381 Pa.Super. 149, 553 A.2d 79 (1988) (holding that conspiracy to distribute cocaine and conspiracy to distribute marijuana merged under Section 903(c) analysis)).[11]

¶ 30 For all of the foregoing reasons, we affirm Appellant's convictions, but remand for resentencing. As we noted in *Commonwealth v. Berrena*, 421 Pa.Super. 247, 617 A.2d 1278, 1280 (1992), "[w]here a case requires a correction of sentence, this Court has the option of either remanding for resentencing or amending the sentence directly." (quotation omitted). Here, since the trial court failed to merge nearly all of Appellant's seven convictions, we conclude that it is proper to remand for resentencing.

¶ 31 Judgment of sentence is vacated and this case is remanded to the Court of Common Pleas of Lackawanna County for resentencing in accordance with this decision. Jurisdiction is relinquished.

---

11. In his brief, Appellant states the following: Although the overall sentence is within the guidelines for these particular offenses, Defendant submits that the Sentencing Court may well have attributed much greater harm caused by the Defendant due to its failure to appreciate the merger of the offenses and inflicted punishment far in excess of the harm caused. Considering the circumstances of this case and the illegality of the sentences imposed, [the sentences] were manifestly excessive as well as a gross abuse of discretion.
Appellant's Brief p. 17. Aside from these bald allegations, Appellant has failed to cite any authority supporting his challenge to the discretionary aspects of sentencing and has failed to develop adequately the claim. As such, we find it to be waived. Pa.R.A.P. 2119.