J. A27002/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                                         :         PENNSYLVANIA
             v.                 :
                                         :
MICHAEL LEE EVANS,          :         No. 1781 WDA 2013
                                         :
               Appellant       :


Appeal from the Judgment of Sentence, June 4, 2013,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0015114-2012


BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND MUSMANNO, JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED JANUARY 21, 2015**

Michael Lee Evans appeals from the judgment of sentence entered on June 4, 2013, in the Court of Common Pleas of Allegheny County.  Following a bench trial, appellant was convicted of theft by unlawful taking, receiving stolen property, and fleeing or attempting to elude police officer.  For the following reasons, we reverse and remand for resentencing and affirm on all other bases.

On October 25, 2012, at approximately 5:20 a.m., Officer Robert J. Stipetich was dispatched to the 3600 block of Mt. Troy Road for a vehicle that was reported stolen.  The officer was informed that the vehicle, a white Impala, had a GPS system installed which indicated the vehicle was traveling southbound on that road.  (Notes of testimony, 6/4/13 at 22.)  As the officer traveled to this location, a white Impala passed him in the 2600 block of

Mt. Troy Road. (*Id.*) The vehicle had the lettering "ComTransit" on its side in black lettering.

Officer Stipetich turned his marked police vehicle around, followed the Impala, and activated his overhead lights at a stop sign. (*Id.* at 22-23.) The Impala drove off at a high rate of speed, and the officer followed for a few blocks until the vehicle crashed into a wall. (*Id.* at 23.) At the scene, Officer Stipetich found appellant unconscious. Once the vehicle was opened, appellant was conscious and alert; paramedics were notified, and he was transported to a hospital. (*Id.* at 25.) After appellant was removed from the vehicle, the officer noticed the steering column was intact and the keys were in the ignition.

Richard J. McCrosby, a safety supervisor for Communities Transportation, Inc., testified that while heading to work on October 25, 2012, at approximately 4:50 a.m., he was informed that one of the organization's vehicles was missing from a secured lot. (*Id.* at 6.) He called the police and stated a white Chevrolet Impala was missing from lot No. 4 River Road. (*Id.* at 6-7.)

McCrosby testified that although lot No. 4 was equipped with surveillance equipment on the date of the incident, it did not record the theft of the vehicle. He also testified that the vehicles are equipped with a GPS tracking device and a "drive cam device" which measures "any quick stop . . . or lateral G force [motion] from side to side." (*Id.* at 7, 11-12.)

McCrosby viewed a number of videos taken from a camera located inside the vehicle, which pictured the driver. (*Id.* at 8.) He then identified appellant as the driver and stated that appellant was not an employee of the company, and McCrosby did not know appellant. (*Id.* at 9.) The video was played for the trial court; the video consisted of various clips taken from a camera located inside the vehicle, which activated when the vehicle moved in certain directions.

McCrosby then described the condition of the vehicle when it was recovered by the police; he stated it was "totaled." (*Id.* at 12.) On cross-examination, McCrosby noted the ignition wiring underneath the steering column had not been pulled out or spliced, stated the driver's side window was intact, and there was no sign of manipulation of the door locks. (*Id.* at 17.) He testified the keys were likely in the vehicle. (*Id.* at 19.)

Thereafter, the trial court found appellant guilty of all counts. The court then sentenced appellant to two to four years of incarceration on each of the three counts to run concurrently; he was also sentenced to an additional seven years of probation on each of the three counts to run consecutively to the incarceration and to each other. (*Id.* at 37.) Appellant filed a timely post-sentence motion, which was denied by operation of law pursuant to Pa.R.Crim.P. 720(B)(3)(b). A timely notice of appeal was filed, and appellant complied with the trial court's order to file a concise statement

of errors complained of on appeal; the trial court has filed a Rule 1925(a) opinion.

The following issues have been presented for our review:

I.  DID THE TRIAL COURT ERR WHEN IT IMPOSED A SENTENCE THAT EXCEEDED THE STATUTORY MAXIMUM AT EACH COUNT AND FAILED TO MERGE THE LESSER INCLUDED OFFENSE FOR PURPOSES OF SENTENCING?

II. DID THE TRIAL COURT ERR WHEN IT RELIEVED THE COMMONWEALTH OF ITS NEVER-SHIFTING BURDEN OF PROVING GUILT, AND REQUIRED MR. EVANS TO PROVE HIS INNOCENCE, WHEN, DURING DEFENSE COUNSEL'S CLOSING ARGUMENT, IT IMPLORED COUNSEL TO PROVIDE AN EXPLANATION FOR WHY MR. EVANS WAS DRIVING THE VEHICLE IN QUESTION?

III. WAS THE CIRCUMSTANTIAL EVIDENCE INSUFFICIENT TO PROVE, BEYOND A REASONABLE DOUBT, THAT MR. EVANS STOLE THE VEHICLE, KNEW IT WAS STOLEN, OR BELIEVED IT WAS PROBABLY STOLEN, WHERE, AMONG OTHER THINGS, THE VEHICLE HAD NO PHYSICAL MANIFESTATIONS OF THEFT WHEN IN MR. EVANS' POSSESSION?

Appellant's brief at 6.

Appellant first argues that his sentence is illegal and we must remand for resentencing. Appellant claims that the trial court was limited to imposing a sentence not to exceed seven years' on each count. Appellant also contends that theft and receiving stolen property convictions merge for the purposes of sentencing.

This issue was not included in appellant's Rule 1925(b) statement and was not raised in the trial court. However, challenges to an illegal sentence cannot be waived. ***Commonwealth v. Mears***, 972 A.2d 1210, 1211 (Pa.Super. 2009).

> The scope and standard of review applied to determine the legality of a sentence are well established. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law.

***Commonwealth v. Leverette***, 911 A.2d 998, 1001-1002 (Pa.Super. 2006) (citations omitted). A challenge to the legality of a sentence:

> is essentially a claim that the trial court did not have jurisdiction to impose the sentence that it handed down . . . . A trial court ordinarily has jurisdiction to impose any sentence which is within the range of punishments which the legislature has authorized for the defendant's crimes.

***Commonwealth v. Cappellini***, 690 A.2d 1220, 1226 (Pa.Super. 1997), quoting ***Commonwealth v. Catanch***, 581 A.2d 226, 228 (Pa.Super. 1990).

The Commonwealth concedes that appellant's arguments are correct and we concur. The statutory maximum penalty for a third degree felony is seven years' incarceration. 18 Pa.C.S.A. § 1103(3). Thus, appellant's sentence on each count that involved both incarceration and probation is illegal as it exceeded seven years.

Appellant is also correct, and the Commonwealth concurs, that the crimes of theft and receiving stolen property should have merged. The crimes arose from the same incident and involved the same stolen item. Where there is but one single act, offenses do not merge unless one offense is a lesser-included offense of the other. This court has previously stated that theft by receiving stolen property is a lesser-included offense of theft by unlawful taking. **See Commonwealth v. Rippy**, 732 A.2d 1216, 1224 (Pa.Super. 1999) (overruled on other grounds). Therefore, we remand for re-sentencing.

In his second issue, appellant alleges the trial court relieved the Commonwealth of its burden of proof. Appellant argues the trial court "demanded on numerous occasions" that defense counsel provide a reason why appellant was in the vehicle. (Appellant's brief at 18-19.) We cannot agree.

"Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "When an event prejudicial to a defendant occurs at trial, he may either object, requesting curative instructions, or move for a mistrial." **Commonwealth v. Boring**, 684 A.2d 561, 568 (Pa.Super. 1996), **appeal denied**, 689 A.2d 230 (Pa. 1997). An allegedly prejudicial event at a bench trial requires a prompt objection from defense or a request for a mistrial to preserve the issue for appellate review. **Commonwealth v. Rhone**, 619 A.2d 1080 (Pa.Super. 1993), **appeal**

*denied*, 627 A.2d 731 (Pa. 1993). "When a case is tried to the court rather than a jury, we will presume the court applied proper legal standards." *Commonwealth v. Hunter*, 554 A.2d 550, 558 (Pa.Super. 1989), citing *Commonwealth v. Donofrio*, 372 A.2d 859, 860 (Pa.Super. 1977) (stating, in non-jury trial, court "is imbued with the knowledge of the law that he would have given in a formal charge in a jury case. . .").

Appellant directs our attention to the following exchange during closing argument:

> THE COURT: Do you want to make any closing comments?
>
> MR. NESS: I would, your Honor.
>
> THE COURT: I am curious; I want to hear your argument.
>
> MR. NESS: Your Honor, I am not going to insult the Court and argue that Mr. Evans was not the individual that was ultimately recovered inside this vehicle. That would defy logic; obviously he was.
>
> THE COURT: Right.
>
> MR. NESS: The question today is whether or not -- primarily let's start with did he steal the white Impala that morning?
>
> THE COURT: Let me tell you as the statute reads. The actor unlawfully took or exercised unlawful control over an automobile.
>
> You don't have just take it, but if you exercise unlawful control over an automobile, 2007 Chevy Impala with Community Transportation Inc., written on it, with the intent to deprive the owner thereof, then you are guilty of theft.

It doesn't mean you have to take it. If you exercise unlawful control over it.

Now, let me tell you the second charge. It is receiving stolen property. Actor intentionally received, retained or disposed of a vehicle, 2007 Chevrolet, belonging to Community Transit, knowing that it had been stolen or believed it had probably been stolen.

Fleeing or attempting to elude police officers: The actor drove a motor vehicle[,] willfully failed or refused to bring the vehicle to a stop, or otherwise fled or attempted to elude pursuing police officers, having been given visual or audible signals to bring the vehicle to a stop.

Now, you tell me what your argument is.

MR. NESS: Even under unlawful control, theft by unlawful taking, your Honor, the Commonwealth has to prove my client did exercise unlawful control; there has been no testimony --

THE COURT: What is he doing in a Community Transportation vehicle at 4:30 in the morning, driving at 50 miles an hour, fleeing the police officers with a light on?

MR. NESS: They still haven't demonstrated that he knew it was stolen, or otherwise potentially stolen. It is to produce that he would have known that.

THE COURT: Why he would be in a vehicle that belongs to Community Transportation, a white 2007 Chevy with Community Transportation written on both sides? What's the reason for him being in it?

MR. NESS: I don't necessarily believe my client has to offer an explanation, your Honor.

THE COURT: Okay.

MR. NESS: But I would pose to you, that there is -- all the other signs that an individual would usually have known that a car is stolen are absent in this case. The steering column is intact, the wiring is intact; the locking mechanism is intact.

THE COURT: Why is he in the car?

MR. NESS: I could draw any number of possibilities, your Honor.

THE COURT: Give me one logical explanation why he is driving the Community Transportation vehicle, at four in the morning?

MR. NESS: Why is he driving in the morning? Perhaps he needed to run to the convenience store. How did he get the vehicle? Perhaps someone else stole the vehicle and allowed him to use it. I could throw out all kinds of different possibilities.

THE COURT: Give me one that makes sense.

MR. NESS: Someone -- another individual stole the car. We don't know what time the -- time the crime occurred. In an effort to get rid of the vehicle, they passed it to Mr. Evans. Mr. Evans needed some type of other items, goes to the convenience store. And as a result the police officers -- Also, with regards to the fleeing and eluding, your Honor, they have to have a felony elevation of the statute. They have to prove that he was otherwise speeding. He was going fast. And there is no testimony offered regarding the exact speed or whether or not --

THE COURT: Well, what if he crashes into a wall? Does that mean he is going faster --

MR. NESS: Perhaps he it [sic] was driving recklessly, but not necessarily to the grading of a felony.

THE COURT: Very well. Any other from the defense?

> Mr. McKendry, what are your thoughts? You don't
> need to make any argument, I am finding him guilty
> of all counts.

Notes of testimony, 6/4/13 at 31-35.

As the trial court notes, the record reflects counsel did not promptly object to the court's "pointed inquiries about his client's unexplained possession of the car" and argue such was an improper shift of the burden of proof to appellant. (Trial court opinion, 3/5/14 at 9.) Nor did counsel move for a mistrial. Consequently, we could find appellant failed to preserve this issue for appellate review.

Nevertheless, we disagree with appellant's assertion that the trial court's comments evidenced that the court had shifted the burden of proof following this non-jury trial. Sitting as fact-finder, the trial court is presumed to have applied the proper legal standard regarding the burden of proof. *See Hunter*, *supra*; *Donofrio*, *supra*. The court gave the testimony the weight it deemed appropriate and gauged the credibility of the Commonwealth's witnesses. *See also Commonwealth v. McCall*, 911 A.2d 992 (Pa.Super. 2006) (holding trial court did not shift burden of proof to defendant by commenting, just prior to reaching verdict in a bench trial, that no evidence detracted from conclusion that defendant was a member of conspiracy; the court's reflection on production of evidence was fair commentary, and presented no grounds for reversal). Even if properly preserved, we would decline to disturb the court's verdict on this ground.

The final issue presented challenges the sufficiency of the evidence. (Appellant's brief at 26.) We must first determine if this claim was preserved for review in appellant's Rule 1925(b) statement. Rule 1925(b)(4) provides, in pertinent part, as follows:

> The Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge.

Pa.R.A.P. 1925(b)(4)(ii). Pursuant to Rule 1925(b)(4)(vii), "Issues not included in the Statement and/or not raised in accordance with [Rule 1925(b)(4) ] are waived." As our supreme court recently reiterated:

> Our jurisprudence is clear and well-settled, and firmly establishes that: Rule 1925(b) sets out a simple bright-line rule, which obligates an appellant to file and serve a Rule 1925(b) statement, when so ordered; any issues not raised in a Rule 1925(b) statement will be deemed waived; the courts lack the authority to countenance deviations from the Rule's terms; the Rule's provisions are not subject to ad hoc exceptions or selective enforcement; appellants and their counsel are responsible for complying with the Rule's requirements.

***Commonwealth v. Hill***, 16 A.3d 484, 494 (Pa. 2011).

In his Rule 1925(b) statement, appellant stated the following pertaining to the instant issue:

> a. The verdict of guilty on counts 1 and 2 was rendered contrary to the weight of the evidence presented at trial, as the "evidence presented" was so contrary to the verdict rendered that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to

> prevail." ***Commonwealth v. Smith***, 861 A.2d 892, 295 (Pa.Super. 2004). Count 1 required the Commonwealth to prove [appellant] either stole the vehicle or exercised unlawful control over it, and Count 2 required the Commonwealth to prove he knew or should have known the vehicle was stolen. The Commonwealth presented no evidence of when, how, or even if the vehicle in question was illegally taken from the premises. The Commonwealth presented no testimony by any witness with any firsthand knowledge of the alleged theft of the vehicle. Additionally, it "shocks one's sense of justice that the Court convicted [appellant] based on the theory that possession of the vehicle alone equated to the unproved assumption that he stole, or otherwise knew it was stolen.

Docket #16.

We agree with the trial court that appellant's "assertions sound like sufficiency challenges dressed in weight clothes. The mere genuflection to the correct legal standard does not transpose what is a sufficiency argument into a weight challenge." (Trial court opinion, 3/5/14 at 3-4.) Appellant has waived his claim that the evidence was insufficient to support his convictions of theft and receiving stolen property as he did not present a sufficiency claim in his Rule 1925(b) statement; rather, his challenges to these convictions were styled as a weight of the evidence claim.

Sufficiency of the evidence claims are distinct from weight of the evidence claims, as there are different standards of review as well as separate remedies involved. ***Commonwealth v. Whiteman***, 485 A.2d 459 (Pa.Super. 1984). Indeed, in making a claim that the verdict was against

the weight of the evidence, it is conceded that there was sufficient evidence to sustain the verdict. ***Commonwealth v. Murray***, 597 A.2d 111, 113 (Pa.Super. 1991), ***appeal denied***, 605 A.2d 333 (Pa. 1992), citing ***Commonwealth v. Taylor***, 471 A.2d 1228 (Pa.Super. 1984). Thus, the claims presented in appellant's brief are technically waived.

However, the trial court addressed appellant's argument and found the sufficiency claim to be meritless. Thus, we have carefully reviewed the briefs, the relevant law, the record, and the well-reasoned opinion authored by the Honorable Joseph K. Williams, III. We find that Judge Williams' opinion correctly disposes of the issues presented, and accordingly, we affirm the conviction based on the trial court's opinion. (Trial court opinion, 3/5/14 at 4.)

Conviction affirmed. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/21/2015</u>

IN THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY

COMMONWEALTH
of PENNSYLVANIA

v.

MICHAEL L. EVANS,

Defendant.

CRIMINAL DIVSION

CC# 2012-15 114

1781 WDA 2013



Michael Streily, *Deputy D.A. – appeal*
Aaron McKendry, *Assistant D.A. – trial*
Timothy LaVoie, *Defense Counsel – appeal*
Matthew Ness, *Defense Counsel – trial*

## OPINION

A non-jury trial ended with a guilt determination followed by a sentencing hearing. Mr. Evans does not like the trial's result so he has appealed to our Superior Court. He raises 3 claims. First, he appears to attack the weight of the evidence. He then advances a sufficiency claim on a particular charge. He concludes with a complaint about this Court's conduct during his lawyer's closing argument. These arguments will be addressed after the case history.

In October, 2012, Evans was charged with 3 crimes: theft of a car, receiving stolen property, and fleeing or attempting to elude a police officer. On June 4, 2013, Evans waived his right to a jury trial and

# APPENDIX A

1

proceeded with a non-jury trial.[1] The Commonwealth presented testimony from 2 witnesses. Their testimony consumed a mere 25 transcript pages.[2] The defense rested without presenting any evidence. Trial Transcript ("TT"), pg. 31. The Court then heard argument from defense counsel. TT, 31-35. A guilt determination was then entered as to each count. TT, 35. Sentencing followed immediately thereafter. His punishment was 2-4 years in jail followed by 7 years of probation. This was imposed at each count. The terms of incarceration were concurrent with each other while the probation periods were made consecutive to the others. Just 2 days later, Evans filed a post-sentence motion. He raised two claims: a challenge to the evidence's weight and a burden shifting issue based upon the Court's questions during closing argument. Post-Sentence Motion ("PSM"), (June 6, 2013). The government complied with the Court's order and filed a response on August 13, 2013. Those motions were denied by operation of law on October 7, 2013. A *Notice of Appeal* was docketed on November 6, 2013. Evans filed his *Concise Statement* on December 4, 2013. It includes the same pair of post-sentence claims along with a sufficiency challenge.

The weight and the sufficiency challenge can be better understood after a review of the facts. Richard McCosby works for a company that supplies transportation services to those people who need transportation. This service is commonly known as "Access". On October 25, 2012, Mr. McCosby arrives at work around 4:50 a.m. He is informed by a co-worker that a vehicle is missing and the police have been called. The Court also learned that each Access vehicle has a video recording device inside the vehicle. About an hour later, the missing vehicle was found thanks to the GPS system inside each vehicle. TT, 12. It had crashed. The damage was extensive. The vehicle was "totaled". TT, 11, 12. At some point, the video data was recovered from this particular vehicle. The video showed the defendant driving the Access vehicle. TT, 8. The Court learned from Mr. McCosby that Mr. Evans was not an employee of the company and he was not authorized to be in this vehicle. TT, 9.

---

[1] The trial transcript was filed on July 1, 2013 and has a tracking number of T13-1416.

[2] Testimony began on page 5 and ended on page 30.

The government's other witness was a police officer. Robert Stipetich was working the late shift and he received information that a white, Chevy Impala with black lettering on the side was traveling at a particular location. Stipetich went to that area and spotted the car. The Impala stopped for a stop sign. Stipetich was right behind it. He flicked on his police lights. The 2007 Impala took off. Stipetich followed for a little bit, but backed off when the Impala's speed reached 50 miles per hour. Even though Stipetich slowed down, he was still able to pursue the Impala. Soon thereafter, Stipetich came upon the Impala crashed into a wall. TT, 23. In the driver's seat was Mr. Evans.

## Sufficient Evidence: Theft and RSP

This collection of facts when coupled with the pertinent case law dooms the supposed weight and sufficiency challenges posed by Mr. Evans. Paragraph 8 of his *Statement of Errors* sets forth his supposed weight of the evidence argument. He says :

> Count 1 required the Commonwealth to prove Mr. Evans either stole the vehicle or exercised unlawful control over it, and Count 2 required the Commonwealth to prove he knew, or should have known the vehicle was stolen. the Commonwealth presented no evidence of when, how, or even if the vehicle in question was illegally taken from the premises. The Commonwealth presented no testimony by any witnesses with any firsthand knowledge of the alleged theft of the vehicle. Additionally, it 'shocks one's sense of justice' that the Court convicted Mr. Evans based upon the theory that possession of the vehicle alone equated to the unproved assumption that he stole, or otherwise knew it was stolen.

*Statement of Errors*, pg. 3, paragraph 8 (Dec. 4, 2013). To a large extent, these assertions sound like sufficiency challenges dressed in weight clothes. The mere genuflection to the correct legal standard does not transpose what is a sufficiency argument into a weight

3

challenge. The Court will disregard Evans' labels and address the substance of the evidence's sufficiency.

Evans attacks the sufficiency of Count 2 - receiving stolen property – by focusing upon a single element. He claims the government's evidence falls short on proof that he knew or should have known the vehicle was stolen. Because he has limited his argument to that 3rd element, the Court will only address the evidence that shows the knowledge element has been satisfied.

What Evans ignores is the power of circumstantial evidence. When police drew its attention to the vehicle, Evans does not stick around and give an explanation to his being in control of the vehicle. Instead, he speeds away from law enforcement and ultimately crashes. It has long been the law that flight can, with the assistance of other evidence, show consciousness of guilt.

The Court was also influenced by the timing. About an hour after the vehicle is reported stolen, Evans is found driving and then crashing that car. In Commonwealth v. Williams, 362 A.2d 244 (Pa. 1976), our Supreme Court found sufficient evidence of being in receipt of a stolen car. A contributing factor to the Williams decision was the time lapse from theft to the accused being in possession. In Williams, it was 12 days. Here, it was about 60 minutes.

The Williams decision also highlights another permissible inference that has immediate application. That inference is "unexplained possession". Id., at 249.

> "Williams himself offered no evidence to explain the possession. Thus, the possession was unexplained and this aids in discounting the possibility of Williams having innocently borrowed the vehicle. Very little experience and only a minute amount of common sense is needed to understand that persons do not lend automobiles to strangers, or for that matter to casual acquaintances."

Id., at 250. Just like in Williams, Mr. Evans presented no explanation. As such, the fact finder was allowed to infer from the circumstance that his possession was unexplained. In conclusion, the government set

4

forth a sufficient quantity and quality of evidence to prove Mr. Evans was guilty of receiving stolen property.

The same conclusion is reached as to Count 1 – theft of the Access vehicle. Mr. Evans assails the government's proof on the taking or exercising unlawful control element. *Statement of Errors*, paragraph 8(a). It is axiomatic that this element can be proven by circumstantial evidence. The government's evidence showed that it was the business practice, of sorts, to leave the keys inside the vehicle as they were parked in a "secured lot" complete with a gate. TT, 18.[3] Again, the timing, the flight and the unexplained possession all contributed to the guilt determination of theft.

## Fleeing and Alluding Police Officer : Felony Version

Mr. Evans third sufficiency challenge centers upon the fleeing and eluding conviction. The statue reads as follows :

§ 3733. Fleeing or attempting to elude police officer.

(a) Offense defined. --Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop, commits an offense as graded in subsection (a.2).

75 Pa.C.S.A. Section 3733. The grading section, (a.2) of the statute, classifies this offense as a misdemeanor of the 2nd degree. However, if certain facts are present, the crime can be deemed a felony of the 3rd degree. 75 Section 3733(a.2)(2)(iii)("An offense under subsection (a) constitutes a felony of the third degree if the driver while fleeing or attempting to elude a police officer does any of the following: (iii)

---

[3] This small collection of facts obliterates any point the defense wanted to make regarding the lack of tell-tale signs that might infer guilty knowledge.

endangers a law enforcement officer or member of the general public due to the driver engaging in a high-speed chase.).

The present Information charged Mr. Evans with the felony variation. It says Mr. Evans "endangered a law enforcement officer or member of the general public due to [his] engaging in a high-speed chase". Information, Count 3. Evans takes exception to the government's evidence to support the felony gradation of that charge.[4]

The government's evidence on the topic follows. The company representative was not able to determine the speed of the vehicle as Evans was driving it. TT, 15. The other witness, Officer Stipetich, testified that he spotted the car and then got behind it at a stop sign. TT, 22-23. At that point, he activated his overhead lights on top of his marked police car. TT, 23. The vehicle Evans was driving then "took off at a high rate of speed". Id. Officer Stipetich followed but eventually backed off. The highest speed the officer reached was 50 miles per hour. TT, 23. During his pursuit, he saw the Chevy Impala blow through a pair of stop signs and also go into the other lane in order to pass a vehicle. TT, 23-24. Immediately before crashing into a wall with enough force to impact the air bags, the Impala sideswiped a couple vehicles. TT, 25. The pursuit lasted maybe a half a mile. TT, 27.

This evidence, when viewed through the lens of our precedent, supports the Court's conclusion that the aggravated part of this statute was proven beyond a reasonable doubt.

The provision at issue has not been the law in our Commonwealth all that long. Subsection (iii) "was added to the statute in response to complaints about chases that endangered the public. See PA S. Jour., 2006 Reg. Sess. No. 46, 1839 (June 27, 2006). Furthermore, the history reveals that the term 'high-speed chase' was intentionally left

---

[4] The appealing party in In re R.C.Y., 27 A.3d 227,229 (Pa. Super. 2011), "[did] not challenge the sufficiency of the evidence for the underlying [charge]...", that is the misdemeanor of the second degree variety. Evans takes the same tact here only claiming error for the felony gradation of his conviction and not the base offense graded as a second degree misdemeanor.

undefined. See id. It was left undefined because it was believed that 'the courts will know them when they see them.' Id." In re R.C.Y., 27 A.3d 227, 230 (Pa. Super. 2011).

This Court's research reveals only two, published opinions that have discussed this provision. In Commonwealth v. Bowen, 55 A.3d 1254 (Pa. Super. 2012), *appeal denied*, 2013 Pa. LEXIS 642 (Pa. 2013), our Superior Court affirmed the trial court's finding that the felony version of fleeing and alluding was appropriate.

> "[T]estimony from State Troopers Roberson and Burnham established that Appellant refused to stop when he knew that police were giving him both visual and audible signs to pull over. Furthermore, testimony from the troopers established that the pursuit lasted approximately 30 minutes and crossed the state line into Maryland. Testimony also established that during the pursuit, Appellant erratically drove at speeds reaching between 70 and 100 miles per hour, endangering other traffic on the roads."

Id., at 1261. The second case is In re R.C.Y., 27 A.3d 227 (Pa. Super. 2011), *rearg denied*, 2011 Pa.Super. Lexis 2717 (2013). There the Superior Court affirmed a juvenile adjudication for the felony version of fleeing and alluding a police officer. The pertinent facts in that case follow.

> Appellant ignore a stop sign and drive through an intersection without stopping. Officer Horton immediately began to follow Appellant, and at the next intersection, he observed Appellant signal for a right turn but turn left.

> Officer Horton engaged his lights and began to pursue Appellant. Appellant proceeded to run through five more stop signs, as well as drive through a yard and over a small tree. Shortly thereafter, Officer Sean Flynn, also of the Sayre Borough Police Department, joined the pursuit. Appellant attempted to avoid the pursuit by pulling into a parking lot, but succeeded only in stranding his vehicle in snow on the grass berm.

7

Officers Horton and Flynn parked their squad cars in a manner to box in Appellant. Unfortunately, Appellant failed to abandon his flight, and continued to rev his engine and spin his wheels in the snow. At one point, Appellant's vehicle regained traction, and Appellant proceeded to back the vehicle into Officer Horton's squad car. After striking Officer Horton's vehicle, Appellant pulled forward and struck Officer Flynn, pinning his leg between the Appellant's vehicle and Officer Flynn's squad car and pushing him onto the hood.

Appellant, still attempting to flee, continued to rev his engine. Officer Horton, in a desperate attempt to end the chase, managed to break the driver's side window in the Appellant's vehicle. Appellant gained enough traction to pull his vehicle through an adjoining parking lot, leaving Officer Horton behind. Officer Flynn, after recovering from being hit by Appellant's vehicle, was in a position to reach into the vehicle through the window that had been broken by Officer Horton. He reached in and attempted to turn off the vehicle. Undaunted, Appellant continued to drive while Officer Flynn was reaching through the window. Eventually, Appellant gained enough speed so that Officer Flynn had difficulty keeping up. Ultimately, Officer Flynn had to roll away from the vehicle to avoid being run over.

Appellant proceeded back onto a public street, where, after a short chase involving at least two other officers, Appellant was finally apprehended when his vehicle stalled.

Id., at 228.

Our facts fall in line with the precedent cited above. We have a fast getaway with speeds in excess of 50 miles an hour, an improper pass of a car, the disregard of stop signs, the side swiping of cars all taking place before the sun came up that October morning. Our Legislature has left to our trial courts the task of determining if one's conduct created an "extraordinary danger to the public at large or to the

8

police officers". <u>In re R.C.Y.</u>, supra, at 230. These facts created the extra danger that calls for the extra penalty.

### Closing Argument: Burden Shift

Evans' final argument concerns the interaction between the Court and his lawyer during closing argument in this non-jury trial. According to Evans his due process rights were violated when the Court asked his lawyer very pointed questions about some aspects of the evidence. Evans says this conduct "improperly shifted the burden of proof to" him which deprived him of a "fair and impartial trial." *Statement of Errors*, paragraph 8(c).

With the exception of certain sentencing arguments, preservation of an issue is paramount to later judicial review. Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Matters that arise at trial require a contemporaneous objection. <u>Commonwealth v. May</u>, 887 A.2d 750, 761 (Pa. 2005)(holding that an "absence of contemporaneous objections renders" an appellant's claims waived); <u>Commonwealth v. Bruce</u>, 916 A.2d 657, 671 (Pa.Super. 2007), *appeal denied*, 932 A.2d 74 (Pa. 2007) (holding that a "failure to offer a timely and specific objection results in waiver of" the claim); *see also*, <u>Commonwealth v. Butts</u>, 434 A.2d 1216 (Pa. 1981)("A litigant must do two things in order to preserve an issue. First, he must make a timely, specific objection at trial . . . . And second, he must raise the issue on post-trial motion."). Evans voiced no contemporaneous objection to the Court's pointed inquiries about his client's unexplained possession of the car. TT, 31-35. The issue has been waived.

BY THE COURT:

Joseph K. Williams, III

9